**FILED**
**JUN 1 2000**
LARRY W. PROPES, CLERK
COLUMBIA, S.C.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

**ENTERED**
**JUN 1 2000**

| | |
|---|---|
| Allison Alphonso Ross | ) C/A No.: 3:99-984-17BD |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| University of South Carolina and Gene L. Luna | ) |
| | ) |
| Defendants. | ) |

This matter is before the court for review of the magistrate judge's report and recommendation made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02.

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261 (1976). The district court is charged with making a *de novo* determination of those portions of the report and recommendation to which specific objection is made, and it may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

Plaintiff initiated this action against his former employer, the University of South Carolina ("U.S.C."), and Gene L. Luna, Director of Housing for U.S.C. Plaintiff is an African American who worked at U.S.C. from July 1982 until September 3, 1998. He began his employment as area manager for Residential Life Services and by the time of his discharge had risen to the position of Assistant Director of Housing Maintenance ("ADHM"). The ADHM position is directly below the

position of Associate Director of Housing Facilities ("ADHF"). In 1997, the position of ADHF became vacant. A screening committee was formed, and plaintiff applied for this position, but was not selected by the committee as one of the eight finalists. Tom Battenhouse, a white male, was selected. Following unsuccessful administrative grievances, plaintiff initiated complaints with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC").

According to the complaint, after plaintiff made allegations of discrimination, Battenhouse, (at the direction of Luna) began to scrutinize plaintiff's work and prevent plaintiff from managing his job, in retaliation for plaintiff having filed his complaint of discrimination. Plaintiff contends that Battenhouse required him to move a miniature putting green from his office and required him to leave his door open, although no other employees were required to do this. The record in this case reveals that it is undisputed that plaintiff refused to move the putting green, and he also continued to close, and sometimes lock, his office door. Plaintiff was terminated by U.S.C. on September 3, 1998 on the grounds of insubordination. After filing internal grievances with U.S.C., plaintiff turned to this court. Originally, he asserted claims for discriminatory failure to promote and discriminatory termination (retaliation) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; deprivation of equal rights under 42 U.S.C. § 1981; and violation of his First Amendment rights under 42 U.S.C. § 1983. In addition, he asserted a supplementary state law claim for breach of contract.

Before the magistrate judge, both defendants moved for summary judgment. Plaintiff then dropped his equal rights claim under Section 1981 and his discriminatory failure to promote claim under Title VII. He opposed summary judgment as to his remaining claims. The magistrate judge to whom this matter was referred has filed a detailed and comprehensive report and recommendation

2

AO 72A
(Rev.8/82)

suggesting that the defendants' motion for summary judgment be granted on plaintiff's First Amendment claim under Section 1983 and his Retaliation claim under Title VII. As to the remaining state law claim, the magistrate judge suggests that this court should dismiss this claim without prejudice so that it may be litigated, if at all, in state court.

Through his attorney, Ross has filed a five-page objection memorandum which was received by the clerk on May 26, 2000. The court has carefully reviewed the objection memorandum in light of the report and recommendation and the entire record in this case and finds no basis for disturbing the magistrate judge's recommended disposition.

## The First Amendment Claim

Plaintiff alleges in this cause of action that his right to free speech guaranteed by the First Amendment was violated when Luna took affirmative steps to "chill" his speech and fired him in retaliation for engaging in his right of free speech. As the magistrate judge correctly observes, however, it is well settled that in order to be protected, the speech at issue must be on a matter of public concern, and, in the case of a public employee, the employee's interest in expressing himself must not be outweighed by any injury the speech would cause to "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Waters v. Churchill*, 114 S.Ct. 1878, 1884 (1994).

In this case, plaintiff alleges that he exercised his First Amendment rights and was speaking out on a matter of public concern when he filed his internal grievance with U.S.C. and his complaints with SCHAC and EEOC. Plaintiff relies primarily on the Fourth Circuit decision of *Cromer v. Brown*, 88 F.3d 1315 (4th Cir. 1996) to support his claim that his speech touched an area of vital public interest, to wit, racial discrimination at U.S.C. The magistrate judge distinguished the *Cromer* decision, however, suggesting that in *Cromer*, the African American plaintiff was one

3

of a group of sheriff's deputies who formed a "Black Law Enforcement Officers Association" to speak out about alleged racial discrimination employment under the Sheriff. Here, as the magistrate judge notes, plaintiff complained that he was the victim of race discrimination when he was denied promotion to the position of ADHF. The record clearly indicates, however, that his comments to his supervisors on this matter almost exclusively concerned his own personal situation. As the magistrate judge observes, plaintiff responded "no" when asked "Do you know any other employees or applicants of your group who were treated in the same way (checked above) who alleged you were?" on his internal complaint. On this record, the magistrate judge concludes that the plaintiff's evidence is insufficient to maintain a First Amendment claim.

In objecting to this portion of the report and recommendation, Ross contends that the magistrate judge placed undue weight on the "perceived factual differences between the *Cromer v. Brown* case and those of the case at bar." He suggests that nothing in the *Cromer* decision indicates that there must be more than a single employee to bring a First Amendment claim. In regard to the response given on the form asking about other employees of the affected group who were treated similarly, plaintiff suggests that this was in response to a standard Department of Labor form and that the magistrate judge has taken it out of context.

The court is constrained to overrule all of these objections. This court has carefully reviewed the *Cromer* decision and agrees with the magistrate judge that the facts of that case were quite different from the instant case. Because plaintiff has failed to produce evidence sufficient to create a genuine issue of material fact as to whether his speech touched on a matter of public concern, the magistrate judge was correct in suggesting that this claim be dismissed.

### The Title VII Retaliation Claim

The magistrate judge concludes that in regard to the Title VII claim, the plaintiff has

4

sufficiently set out a prima facie case, and that the defendant has set forth a legitimate, non-discriminatory reason for its actions. The magistrate judge then turned to the third stage of the analysis and inquired as to whether the plaintiff can still prevail by demonstrating by a preponderance of the evidence that U.S.C.'s proffered reason for his discharge was a mere pretext for discriminatory conduct.

The magistrate judge has carefully reviewed the rather voluminous record in this case and has concluded that the plaintiff has not submitted sufficient facts to establish pretext in this case. According to the magistrate judge, the mere fact that plaintiff complained that he believed he was being discriminated against does not immunize him from otherwise being reprimanded, suspended or discharged for valid reasons. The magistrate judge correctly notes that the plaintiff was clearly insubordinate during the relevant period of time and plaintiff himself admitted during the initial conversation with Battenhouse that he (plaintiff) would not be of much help to Battenhouse because he was bitter about not having himself been selected for the position. Battenhouse testified that thereafter plaintiff was continually resistant to his authority, defensive about even minor requests, and non-compliant with reasonable directives regarding assignments and deadlines. The most prominent example, of course, is plaintiff's failure to remove the putting green from his office when being given explicit instructions to do so.

In objecting to this portion of the report and recommendation, plaintiff contends that the magistrate judge failed to address "the discrimination evident in requiring Mr. Ross to comply with a higher standard than other employees simply because he complained about race discrimination." He suggests that his work habits did not exhibit "declining performance" as found by the magistrate judge, but actually were the "direct result of [defendants'] discrimination and a racially hostile work environment." Plaintiff suggests that the magistrate judge ignored a statement on page 16 of his

5

AO 72A
(Rev.8/82)

memorandum that "Luna concedes that prior to his complaints about racial discrimination, Ross was not reprimanded for poor performance." In sum, Ross contends that the magistrate judge placed undue importance on issues raised by defendants that are unsupported by the record.

The court is unpersuaded by these arguments. The record in this case, even viewed in the light most favorable to the plaintiff, discloses that the magistrate judge is correct in concluding that plaintiff's own admissions that he refused to comply with direct and repeated instructions from his supervisor indicate that he is unable to demonstrate pretext in this case.

After reviewing the record in this case, the applicable law, the report and recommendation of the magistrate judge, and plaintiff's objection memorandum, this court concludes that the magistrate judge's recommended disposition is correct. The report and recommendation is incorporated herein by reference; all objections are overruled; defendants' motion for summary judgment as to the Section 1983 claim for violation of the First Amendment and his Title VII claim for retaliation is granted. The remaining federal claims have been withdrawn by the plaintiff. In accordance with the recommendation of the magistrate judge, the court will decline to exercise jurisdiction over the remaining state law claim and will dismiss that claim, without prejudice, to be litigated in state court, if at all.

For the foregoing reasons, all federal claims are dismissed, with prejudice; the state law claim is dismissed without prejudice; and this action is hereby ended.

IT IS SO ORDERED.

Joseph F. Anderson, Jr.
United States District Judge

June 1, 2000
Columbia, South Carolina